IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DONNA D. TAGGART, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   Case No. 21-04109-CV-C-MDH-SSA |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       Defendant. | ) |

## ORDER

Before the Court is Plaintiff Donna Taggart's appeal of Defendant Social Security Administration Commissioner's denial of her application for supplemental security income benefits under Title XIV of the Social Security Act ("the Act"). Plaintiff exhausted her administrative remedies, and the matter is now ripe for judicial review. After carefully reviewing the record and briefing from both parties, the Court finds the administrative law judge's ("ALJ") decision failed to comport to requirements of SSR 96-8p and the decision is **REVERSED AND REMANDED**.

## BACKGROUND

Plaintiff filed two applications under the Act—an application for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq.*, and an application for supplemental security income under Title XVI, 42 U.S.C. §§ 1381, *et seq*. (Doc. 3 at ¶ 4). Plaintiff's applications were initially denied January 22, 2019. (Tr. 99-111). Plaintiff appealed to an administrative law judge (ALJ) March 12, 2019. (Tr. 112-113). Plaintiff voluntarily withdrew her request for a hearing regarding disability and disability insurance benefits, pursuing a hearing only related to

1

supplemental security income. (Tr. 208). Following a hearing, the ALJ held Plaintiff is not disabled. (Tr. 13-15). The Appeals Council denied Plaintiff's Request for Review of Hearing April 5, 2021. (Tr. 1-7). This Court now has jurisdiction to review the ALJ's decision. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff originally applied for disability insurance on or about November 23, 2018, and income benefits on or about December 19, 2018. (Tr. 185-192). Plaintiff alleged disability beginning November 21, 2018, stemming from various conditions including temporomandibular joint disfunction, rheumatoid arthritis, fibromyalgia, ulcerative colitis, carpal tunnel syndrome, osteoarthritis, osteoporosis, obsessive compulsive disorder, bipolar disorder, depression, Crohn's disease, Lyme disease, restless leg syndrome, glaucoma, and lupus. (Tr. 210; 19). The ALJ determined Plaintiff suffered the following severe impairments: cervical osteoarthritis/spondylosis and degenerative disc disease with prior fusion surgery at C3-C6; chronic pain syndrome; major depressive disorder; generalized anxiety disorder; attention deficit hyperactivity disorder ("ADHD"); post-traumatic stress disorder ("PTSD"); and polysubstance use disorder (methamphetamines, amphetamines, opiates, alcohol, cannabis) in reported remission. (Tr. 19). The ALJ also found Plaintiff suffers several other non-severe conditions: rectal prolapse status post-rectopexy surgery; ulcerative colitis; umbilical hernia; headaches; chronic obstructive pulmonary disease; hypertension; and history of abscess and cellulitis with incision and drainage. (Tr. 19). The ALJ further determined Plaintiff possessed the residual functional capacity (RFC) to perform light work as defined by 20 CFR 416.967(b) with additional limitations. (Tr. 21).

Plaintiff argues this Court should reverse the ALJ's decision for two reasons. (Doc. 14 at 1). First, Plaintiff's RFC lacked substantial evidence of Plaintiff's functioning, particularly post-

2

Case 2:21-cv-04109-MDH    Document 21    Filed 09/26/22    Page 2 of 10

cervical surgery. *Id*. Second, Plaintiff met the de minimis standard required to show severe gastrointestinal impairments. *Id*. Defendant argues substantial evidence supports Plaintiff's RFC and non-severe determination of Plaintiff's gastrointestinal impairments. (Doc. 19 at 2; 8).

## **STANDARD**

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. §§ 405(g), 1383(c)(1)(B)(ii)(3). Substantial evidence is less than a preponderance requiring enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). This standard requires courts to consider evidence in favor of and against the Commissioner's decision. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is insufficient for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). Rather, "[i]f, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

Courts "defer heavily to the findings and conclusions of the Social Security Administration" and will disturb the Commissioner's decision only if it falls outside the "zone of choice." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). Incorrect application of a legal standard is grounds reversal, *Ford v. Heckler*, 754 F.2d 792 (8th Cir. 1985), but the Court defers to the ALJ's determinations of the credibility of witness testimony, as long as the ALJ's determinations are supported by good reasons and substantial evidence. *Pelkey v. Barnhart,* 433 F.3d 575, 578 (8th Cir. 2006). While

3

deficiency in opinion writing is insufficient to merit reversal where it has no practical effect on the outcome, incomplete analyses, inaccuracies, and unresolved conflicts of evidence may be a basis for remand. *Reeder v. Apfel*, 213 F.3d 984, 988 (8th Cir. 2000).

## **DISCUSSION**

### I. RFC Evidence

The RFC is the most someone can manage despite personal limitations. 20 C.F.R. § 404.1545. Though the ALJ bears primary responsibility for determining RFC based on all evidence, the RFC also remains a medical question. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir.2000)); *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir.2001). '"[S]ome medical evidence' must support the determination of the claimant's RFC." *Baldwin* at 556 (quoting *Dykes v. Apfel,* 223 F.3d 865, 867 (8th Cir.2000) (per curiam). "The ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace [.]'" *Baldwin* at 556 (quoting *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir.2000)).

Plaintiff argues the ALJ relied on insufficient evidence of Plaintiff's functioning, particularly following a September 11, 2019 cervical surgery addressing degenerative disc disease. (Doc. 14 at 1). Plaintiff asserts Nurse Practitioner Terry Krantz ("Krantz") is the sole provider to specifically address Plaintiff's workplace functioning, rendering evidence of Plaintiff's functioning insufficient. (Doc. 14 at 3). Defendant argues substantial evidence supports the RFC. (Doc. 19 at 9-11).

The ALJ concluded Plaintiff has the RFC to perform light work with additional limitations. (Tr. 21). Additional limitations suggest Plaintiff should avoid crawling and climbing, but may frequently reach, handle, and finger. (Tr. 24). The ALJ claims to have considered, *inter*

4

*alia*, treatment records, Plaintiff's statements to medical providers, results of various medical tests, Plaintiff's description of daily activities, Plaintiff's oral hearing statements, and findings about Plaintiff's functioning from Krantz. (Tr. 21-5). The record lacks medical opinion from a consultative examination. (Tr. 25, 75, 89). While the ALJ may have considered Krantz's findings about Plaintiff's functioning, the ALJ found unpersuasive Krantz's conclusion that Plaintiff is capable only of "significantly less than sedentary work." (Tr. 24-5). The ALJ found Krantz's conclusion outdated (Krantz evaluated Plaintiff in November 2018) and inconsistent with the whole of the evidence. (Tr. 24-5).

Regarding Plaintiff's workplace function post-2019 cervical surgery, the ALJ writes, "[The Plaintiff's] newest [pre-surgery] exams in September 2019 revealed decreased neck range of motion, positive Spurling's test, and decreased and painful back range of motion shortly before her spinal surgery, but nothing in the treatment record indicated that these exam findings persisted or worsened post-Surgery (Exhibits B20F; B21F)." (Tr. 23). The ALJ also writes, "though [Plaintiff] testified to significant worsening post-surgery, the record failed to support this (hearing record)." (Tr. 24).

The specific exhibits to which the ALJ cites fail to capture post-surgery treatment. Exhibit B20F corresponds to treatment only through September 9, 2019, two days before Plaintiff's surgery. Exhibit B21F corresponds to treatment records from September 11-12, 2019, when Plaintiff underwent surgery. The 2,000-plus pages comprising the record are altogether void of treatment records and opinions about functioning following Plaintiff's 2019 surgery for degenerative disc disease, which the ALJ determined to be severe. In formulating the RFC, the ALJ may consider as one factor absence of objective medical information corroborating severity of subjective complaints. *Ford v. Heckler*, 754 F.2d 792, 793 (8th Cir. 1985). Unlike *Ford*,

5

however, Plaintiff's comments regard not only her subjective experience of pain, but also constitute the only evidence of record about Plaintiff's post-surgery functioning. See *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) ("The ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace'"). Further, Plaintiff's 2019 pre-surgery exams constitute tests completed for clinical purposes, which have at most limited probative value. This is in part because such clinical findings remain abstract, void of explicit connection to specific alleged disability and workplace-oriented demands.

Defendant argues, "it is the ALJ's function to weigh conflicting evidence and to resolve disagreements among physicians." (Doc. 19 at 14) (citing *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014)). However, lack of evidence corroborating Plaintiff's claims about workplace functioning is distinct from existence of evidence inconsistent with Plaintiff's workplace functioning claims. Defendant argues, "the decision to order a consultative examination is discretionary." (Doc. 19 at 16). Though a consultative examination may be discretionary, the record must nonetheless contain substantial evidence about Plaintiff's functioning. This is especially true where the only evidence of functioning related to a condition the ALJ determined to be severe consists of Plaintiff's subjective statements indicating worse post-surgery functioning.

## II. Severity of Gastrointestinal Impairments

Non-severe impairments do not "significantly limit your physical or mental ability to do basic work activities," whereas severe impairments significantly limit those abilities. 20 C.F.R. § 416.922. At step two of the analysis, the ALJ must determine whether Plaintiff has severe impairments. 20 C.F.R. § 416.920. The Supreme Court has held a de minimis standard applies.

*Bowen v. Yuckert*, 482 U.S. 137, 154 (1987). Incorrect application of a legal standard is grounds reversal. *Ford v. Heckler*, 754 F.2d 792 (8th Cir. 1985). The mere existence of evidence suggesting a conclusion opposed to the ALJ's, however, does not permit reversal. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

Plaintiff argues she met step two's de minimis standard, showing severe gastrointestinal impairments. (Doc. 14 at 9). Though Plaintiff complains of various gastrointestinal impairments, Plaintiff's argument appears limited to rectal prolapse status post rectoplexy surgery and ulcerative colitis. (Doc. 14 at 9). Defendant argues sufficient evidence supports the ALJ's determination Plaintiff's gastrointestinal impairments were non-severe. (Doc. 19 at 6).

Though Plaintiff underwent surgery to repair prolapse, the ALJ reasoned a pre-surgery colonoscopy determined Plaintiff's prolapse to be mild. (Tr. 19). The ALJ notes that Plaintiff indicated the prolapse surgery was effective. (Tr. 19). Plaintiff, however, indicated she still struggled to control her bowels. (Tr. 1114). The ALJ indicated she considered Plaintiff's "biopsies, colonoscopy, barium enema study, and Silz marker study," which showed no signs of ulcerative colitis, though Plaintiff complained of ulcerative colitis symptoms including "monthly weeklong flare-ups with frequent restroom use and other symptoms." (Tr. 19). Determining severity of Plaintiff's gastrointestinal impairments, the ALJ explained she also considered Plaintiff's medical exams showing "only occasional abdominal tenderness and hypoactive bowel sounds," as well as a variety of medical exams showing "a soft abdomen without tenderness, normal bowel sounds, absence of distension, absence of rebound, absence of masses, and absence of guarding." (Tr. 19).

The record supports the ALJ's findings. Plaintiff reported to the emergency room several times during the relevant period, seeking treatment of various gastrointestinal symptoms

including pain, diarrhea, constipation, bloody stools, and rectal prolapse. Plaintiff underwent a CT scan December 4, 2017, before the alleged disability, which indicated normal findings and some mild abnormal findings, including the possibility of stricture. (Tr. 488-9). On October 9-10, 2018, shortly before the alleged disability, Plaintiff returned to the hospital with reports of bloody stool and rectal bleeding, but providers failed to observe these symptoms during hospitalization. (Tr. 367-8). On October 31, 2018, providers determined any proctitis to be mild. (Tr. 349). On November 9, 2018, Plaintiff returned to the emergency room with abdominal pain, diarrhea, and trace amounts of blood in bowel movements. (Tr. 433).

On December 9, 2018, Plaintiff again presented to the emergency room complaining of worsening abdominal pain and bloody stool. (Tr. 824-5). Plaintiff informed providers her rectal prolapse occurs during squatting, straining, and bowel movements. *Id*. No evidence indicates Plaintiff's prolapse occurs at times other than squatting, straining, or during bowel movements. Plaintiff indicated she reduces the prolapse manually. (Tr. 824-5). Given Plaintiff's reports of worsening symptoms, providers ordered various tests. *Id*. On December 21, 2018, Plaintiff underwent a barium study and other testing. (Tr. 811-4). The barium study produced unremarkable results, alleviating possible concern about strictures from the 2017 CT scan. *Id*. The provider notes from this visit also indicate a 2018 colonoscopy revealed no signs of ulcerative colitis. (Tr. 811-4; 550-7). Providers also observed normal Siltz markers, no signs of active bleeding or strictures, and only a mild prolapse. (Tr. 811-4).

On February 18, 2019, Plaintiff returned to complete an evaluation before surgery to repair prolapse. (Tr. 754). Plaintiff reported less frequent prolapses. *Id*. Yet another colonoscopy found no evidence of ulcerative colitis. (Tr. 782-3). On February 2, 2019, Plaintiff underwent surgery to correct prolapse. (Tr. 932-40). During March 2019, Plaintiff indicated prolapse

surgery succeeded, but she struggled to control her bowels. (Tr. 1114). Treatment records of evidence do not indicate Plaintiff sought significant if any care for gastrointestinal impairments following the February 2019 prolapse surgery.

While Plaintiff regularly sought care for various gastrointestinal symptoms, medical records failed to corroborate Plaintiff's subjective statements, apart from mild prolapse. At least two separate colonoscopies failed to produce evidence of colitis. (Tr. 782-3; 550-7). The 2018 barium study alleviated any stricture concern raised by prior CT scans. Plaintiff's statements to providers indicated prolapse occurred only while squatting, straining, or during some bowel movements. (Tr. 824-5). This corroborates providers' assessment Plaintiff's prolapse was only mild. (Tr. 811-4). Plaintiff's claims about ulcerative colitis appear at odds with more objective medical testing indicating the opposite. When the record presents conflicting information, the ALJ is responsible for weighing evidence and resolving disagreement. *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). Evidence suggesting an outcome opposed to the ALJ's conclusion does not permit reversal, given substantial evidence. See *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). While the relevant standard is de minimis, Plaintiff must nonetheless show impairments "*significantly* limit [her] physical or mental ability to do basic work activities" (emphasis added). 20 C.F.R. § 416.922.

## CONCLUSION

Accordingly, it is **ORDERED** this case be remanded for a new administrative hearing and the Commissioner's determination denying Plaintiff's application for supplemental security income benefits is reversed. On remand, the ALJ is required to comply with SSR 98-6p with respect to evaluation of Plaintiff's specific work-related functioning.

**IT IS SO ORDERED.**

Dated: September 26, 2022        _/s/ Douglas Harpool_
                                **DOUGLAS HARPOOL**
                                **United States District Judge**